CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAY 16 2011

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | | |
|---|---|---|
| ROBERT LEE COOKE, | ) | |
| | ) | Civil Action No. 7:10cv00513 |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| GENE JOHNSON, | ) | |
| | ) | **By: Hon. James C. Turk** |
| Respondent. | ) | **Senior United States District Judge** |

Robert Lee Cooke ("Cooke"), a state inmate proceeding pro se, brings this petition for a writ of habeas corpus pursuant to 22 U.S.C. § 2254. Cooke asserts that his continued detention violates the United States Constitution because: (1) his trial counsel was ineffective and (2) the prosecutor committed misconduct. Respondent filed a motion to dismiss and Cooke responded, making the matter ripe for disposition.

Upon review of the parties' arguments and the case record, the Court finds that the Respondent's motion to dismiss must be **GRANTED**, and Petitioner's request for § 2254 relief must be **DENIED**.

## I. Background and Procedural History

On October 24, 2004, Officer Anthony Gluba responded to the scene of a suspected burglary in progress with his police dog, Ingo. Officer Gluba observed Cooke descending a staircase wearing dark clothing and a ski mask. Cooke walked past Officer Gluba, and when Officer Gluba asked to speak with Cooke, Cooke kept walking away. Cooke then removed an object from his waistband and began running away. Officer Gluba pursued Cooke with Ingo and ordered Cooke to stop. According to Officer Gluba, he announced Ingo's presence before releasing the dog to catch Cooke. After releasing Ingo, Officer Gluba saw Cooke with a gun in

his hand, then moments later heard gunshots and Ingo yelping in pain. As he approached the dog, Officer Gluba saw Cooke crouching with his gun drawn out. Officer Gluba then fired at Cooke until Cooke fell to the ground. After the shooting incident, the police took Cooke to the hospital where he made self-incriminating statements to Inspector Jon Cromer.

On June 23, 2006, a jury convicted Cooke of maliciously shooting a police dog and possessing a firearm as a convicted felon. The Circuit Court for Albemarle County sentenced Cooke to an active term of ten years in prison. Cooke petitioned for appeal in the Virginia Court of Appeals, alleging that the evidence adduced at trial was insufficient to sustain his convictions. Cooke also alleged that the Circuit Court erred by denying his suppression motions as untimely, refusing to allow evidence impeaching Officer Gluba and Investigator Jon Cromer, refusing Cooke's proffered jury instructions, and refusing Cooke's motion for a mistrial. The Virginia Court of Appeals granted Cooke's petition for appeal on the issue of whether the Circuit Court erred in denying his motion to suppress. On April 29, 2008, the Virginia Court of Appeals affirmed Cooke's conviction.

Cooke petitioned for appeal in the Supreme Court of Virginia, which refused his petition by order on September 25, 2008. Cooke then filed a petition for writ of habeas corpus in the Supreme Court of Virginia on August 17, 2009 re-alleging his direct appeal claims and claiming that his trial counsel was ineffective. The Supreme Court dismissed Cooke's petition by final order dated July 9, 2010, finding his ineffective assistance of counsel claims to be without merit and that his Circuit Court error claims had not been presented to the Court of Appeals previously and were therefore barred from state habeas review. Cooke filed a motion to reconsider, which the Supreme Court of Virginia denied by final order dated September 22, 2010.

On October 15, 2010, Cooke filed this § 2254 petition, alleging that his continued detention is unconstitutional because (1) his trial counsel was ineffective and (2) the prosecutor committed misconduct.

## II. Standard of Review

### a. Section 2254

Federal courts will entertain a defendant's writ of habeas corpus "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). However, when reviewing the writ, federal courts are required "to accord state-court factual findings a presumption of correctness." Hernandez v. New York, 500 U.S. 352, 366 (1991). This presumption "appl[ies] with equal force to [a federal court's] review of a state trial court's findings of fact made in connection with a federal constitutional claim," except for exceptional circumstances. Id.

## III. Waived Claims

### b. Exhaustion

A state prisoner who files a habeas corpus petition in federal court must first exhaust the remedies available to him in state court. 28 U.S.C. § 2254(b). A federal court may not grant habeas relief for unexhausted state claims not presented to the highest state court. O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999). "The burden of proving a claim has been exhausted lies on the petitioner." Matthews v. Evatt, 105 F.3d 907, 911 (4th Cir. 1997). A state prisoner is considered to have properly exhausted a claim if he either raised that claim on direct appeal or in a state habeas petition. See Ylst v. Nunnemaker, 501 U.S. 797, 805 (1991).

In this § 2254 petition, Cooke charges that (1) his trial counsel was ineffective and (2) the prosecutor committed misconduct. Cooke alleges that his trial counsel was ineffective because she:

(1)     Failed to conduct a proper investigation into certain irregularities in the indictment phase of Cooke's trial;

(2)     Failed to move to quash the indictments;

(3)     Failed to prepare properly so that she could competently present evidence on the motion to quash the indictments;

(4)     Abandoned the element of excessive force as a ground supporting Cooke's motion to suppress any and all evidence against him;

(5)     Failed to timely submit the proper documents necessary to permit the Circuit Court to hear Cooke's pretrial motion to suppress;

(6)     Failed to impeach Investigator Cromer at Cooke's hearing on the motion to suppress;

(7)     Failed to cross-examine Investigator Cromer at trial;

(8)     Improperly waived Cooke's right to a speedy trial;

(9)     Asked for an expanded jury pool instead of requesting a change of venue;

(10)    Failed to impeach Officer Gluba's trial testimony;

(11)    Failed to present evidence of self-defense at trial;

(12)    Operated under a conflict of interest because counsel was a former employee of the Albemarle County Police Department;

(13)    Defrauded the Circuit Court by conspiring with the prosecutor;

(14)    Failed to question the tactics the police used to collect evidence; and

(15)     Failed to authenticate Cooke's medical record in order to permit expert testimony that Cooke did not act knowingly or voluntarily.

Additionally, Cooke alleges that his prosecutor committed misconduct, in that:

(1)     The special prosecutor showed a blatant disregard for Cooke's constitutional rights as a victim when he failed to conduct the grand jury hearing in accordance with Virginia Code §§ 19.2-191 and 19.2-192;

(2)     The special prosecutor abused his discretionary powers by not pursuing an investigation into Officer Gluba's conduct;

(3)     The special prosecutor defrauded the Circuit Court and the public when he abused his powers and abused the secrecy of the grand jury to indict Cooke and exonerate Officer Gluba;

(4)     The prosecutor allowed Investigator Cromer and Officer Gluba to commit perjury at trial;

(5)     The prosecutor failed to produce exculpatory evidence to Cooke's counselors; and

(6)     The prosecutor engaged in prosecutorial misconduct during his closing arguments.

A review of the state court records indicates that Cooke raised all of these claims to the Supreme Court of Virginia. See Cooke v. Director of Department of Corrections, No. 091442 (Va. July 9, 2010). Therefore, Cooke properly exhausted all of the claims presented in his § 2254 petition.

### c.  Procedural Bar

Even if a petitioner properly exhausts all of his claims, a federal court may not hear a claim if it is procedurally barred. A claim is deemed procedurally barred if it has been

adjudicated on independent and adequate state law grounds. Gray v. Netherland, 518 U.S. 152, 162 (1996); see also Harris v. Reed, 489 U.S. 255, 262 (1989) (holding that "a procedural default will not bar consideration of a federal claim on habeas review unless the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar").

However, procedural bar will not foreclose federal habeas review when the failure to review will "result in a fundamental miscarriage of justice" or when the "prisoner can demonstrate cause for the default and actual prejudice as a result." Coleman v. Thompson, 501 U.S. 722, 750 (1991). A "fundamental miscarriage of justice" occurs in the extraordinary case where "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Murray v. Carrier, 477 U.S. 478, 495 (1991); see also Schlup v. Delo, 513 U.S. 298, 327 (1995).

In Virginia state courts, a habeas corpus claim is procedurally barred when the petitioner could have presented the claim at trial and on appeal but did not. Slayton v. Parrigan, 215 Va. 27, 29 (1974). The Fourth Circuit has recognized Slayton as an independent and adequate procedural rule. See Wright v. Angelone, 151 F.3d 151, 159–60 (4th Cir. 1998).

In his habeas petition to the Supreme Court of Virginia, Cooke charged prosecutorial misconduct. The Supreme Court of Virginia barred this claim because those "non-jurisdictional issues could have been raised at trial and on direct appeal," and thus were "not cognizable in a petition for a writ of habeas corpus" pursuant to Slayton. Cooke v. Director of Department of Corrections, No. 091442, at 15–17 (Va. July 9, 2010). Because the Supreme Court of Virginia ruled that the claim was procedurally barred, and that claim was adjudicated on an independent and adequate state law ground, this Court cannot hear the prosecutorial misconduct claim.

Cooke contends, without elaboration, that this procedural bar causes an injustice and results in a fundamental miscarriage of justice. However, Cooke does not demonstrate how this bar creates an injustice arises or provide evidence to show that he is actually innocent. Murray, 477 U.S. at 495. The Court does not find that this procedural bar causes an actual prejudice or results in a fundamental miscarriage of justice. Because Cooke's prosecutorial misconduct claim was dismissed by the Supreme Court of Virginia on non-jurisdictional grounds, Cooke's prosecutorial misconduct claim is procedurally barred in his § 2254 petition.

## IV. Claims Adjudicated on the Merits in State Court

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs the merits of Cooke's § 2254 petition. Pursuant to the AEDPA, a federal court may not grant habeas relief for any claim "that was adjudicated on the merits in State court proceedings," unless the adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," or "resulted in a decision that was based on unreasonable determination of the facts." 28 U.S.C. § 2254(d)(1)–(2).

The Fourth Circuit accords the "contrary to" and "unreasonable application" clauses independent meaning. See Powell v. Kelly, 562 F.3d 656, 664 (4th Cir. 2009). A state court decision is "contrary to" clearly established federal law if the state court's decision (1) contravenes United States Supreme Court precedent as a matter of law or (2) contravenes United States Supreme Court precedent with materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 405 (2000). If the state court (1) unreasonably applies the correct legal rule to the facts, (2) extends a federal legal principle in cases where it should not be applied, or (3) refuses to extend a federal legal principle to cases where it should be applied, then a state court decision is an "unreasonable application" of clearly established federal law. Id. at 407.

### a. Ineffective Assistance of Counsel

In order to challenge a sentence successfully on the basis of ineffective assistance of counsel, Cooke must satisfy the test set forth by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984). In Strickland, the Court held that a finding of ineffective assistance of counsel requires a two-prong showing, and a habeas petitioner bears the burden of persuasion for both prongs. Id. at 687.

First, Cooke must show that the attorney's performance "fell below an objective standard of reasonableness," where reasonableness is determined under the "prevailing professional norms." Id. at 688. In assessing an attorney's performance, a court must be highly deferential to tactical decisions, and the court must filter from its analysis the "distorting effects of hindsight." Id. at 689. Moreover, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id.

Second, Cooke must show that prejudice resulted from counsel's deficient performance. Id. at 692. To establish prejudice, a petitioner must show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine the confidence of the outcome." Id. at 694. Failure to satisfy either prong is fatal to a petitioner's ineffective assistance of counsel claim.

### 1. Counsel Failed to Conduct a Pretrial Investigation

Cooke claims that his attorney failed to conduct a proper pretrial investigation of the special prosecutor's actions during the indictment phase of Cooke's trial. Cooke argues that had his counsel conducted a pretrial investigation, she would have realized that the special prosecutor

only had the authority to present the grand jury with bills of indictment against Cooke, but only against Officer Gluba, not against Cooke.

The Supreme Court of Virginia reviewed the record, including the order of appointment, and found that the special prosecutor had the authority to represent the Commonwealth "in all matters concerning the shooting of Robert Lee Cooke by Officer Andrew Gluba," including the authority to investigate and present the grand jury with bills of indictment against Cooke. Cooke v. Director of Department of Corrections, No. 091442, at 2 (Va. July 9, 2010). The Supreme Court also found that Cooke had failed to identify any statute governing the actions of the special prosecutor or how the special prosecutor violated such a statute. Id. Therefore, Cooke had failed to satisfy either prong of Strickland. Id.

The Supreme Court of Virginia reasonably determined that the special prosecutor had the authority to investigate and present the grand jury with bills of indictment against Cooke. Cooke has not identified in his § 2254 petition any statute governing the actions of the special prosecutor or how the special prosecutor violated the statute. Cooke also has not shown that the outcome of his proceedings would have been different had his counsel conducted a pretrial investigation of the special prosecutor's action during the indictment phase.

Cooke further contends that had his counsel conducted a pretrial investigation, she would have ensured that Cooke and other individuals were called as witnesses in Officer Gluba's grand jury hearing. Because no witnesses testified during Officer Gluba's grand jury hearing, Cooke claims Officer Gluba was not indicted for excessive force and this allowed the special prosecutor to pursue an indictment only against Cooke.

Relying on Virginia Code § 19.2-191, the Supreme Court of Virginia found that Cooke did not have a right to present exculpatory evidence to the grand jury. Id. at 3. The court further

reasoned that Cooke's counsel did not have any control over whether the grand jury would hear the testimony of Officer Gluba. Id. at 4. Thus, Cooke failed to demonstrate that his counsel's performance was deficient or that there was a reasonable probability that, but for Cooke's counsel's alleged deficiency, the result of the proceedings would have been different. Id.

The Supreme Court of Virginia reasonably determined that the Virginia Code did not confer a responsibility on the special prosecutor or counsel to present exculpatory evidence to the grand jury. Virginia Code § 19.2-201 states, "[the attorney for the Commonwealth] shall forthwith institute and prosecute all necessary and proper proceedings in such case . . . and *may* in such case issue or cause to be issued a summons for any witnesses he *may deem material* to give evidence before the court or grand jury." Va. Code Ann. § 19.2-201 (2008) (emphasis added). Even if Cooke's counsel did conduct a pretrial investigation, she had no control over the evidence presented in Officer Gluba's grand jury hearing. Therefore, this Court holds that the Supreme Court of Virginia did not unreasonably find that Cooke failed to satisfy Strickland.

## 2. Counsel Improperly Quashed the Indictments

Cooke claims that his counsel was ineffective by failing to (1) quash the indictments properly and (2) properly present evidence on the motion to quash the indictments. Cooke alleges in his § 2254 petition that his counsel was ineffective for waiting eight months to file the motion to quash the indictments. Cooke further argues that had his counsel been prepared, she could have: (1) demonstrated that the whole grand jury hearing was flawed because Officer Gluba testified in both; (2) shown that the special prosecutor did not have the authority to indict Cooke, and (3) had the jurors testify or used the grand jury transcript to support the motion.

The Supreme Court of Virginia found that Cooke's counsel had moved to quash the indictments on the grounds that the grand jury's actions violated Cooke's right to an objective

grand jury review and that the Circuit Court properly denied the motion. Cooke, at 5–6. The Supreme Court further found that Cooke did not state any legal basis upon which counsel could have established that the grand jury process was defective or how the eight month delay in filing impacted the outcome of the motion. Id. Therefore, the court found that Cooke failed to demonstrate that his counsel's performance was deficient or that there was a reasonable probability that, but for counsel's alleged deficiency, the result of the proceedings would have been different. Id.

The Supreme Court of Virginia did not unreasonably apply the law to this claim. Cooke's counsel indeed did file a motion to quash the indictment on February 21, 2006. In the motion, Cooke's counsel stated that "the grand jury acted without authority in making findings of fact with respect to the same set of facts and circumstances involved in this case but concerning Officer Gluba's action." Id. at 5. Cooke's counsel further argued, "the grand jury's actions are on their face tainted, resulting in a violation of [Cooke's] right to an objective grand jury review." Id. The motion to quash was adequate to challenge the indictment effectively, and the Supreme Court of Virginia reasonably determined that counsel was effective. Cooke's § 2254 petition merely alleges his counsel was ineffective, but does not specify how or otherwise elaborate his clams. Cooke does not note any legal basis upon which counsel could have established a defective grand jury process nor does he show how the eight month delay in filing impacted the outcome of the motion. Accordingly, the Supreme Court of Virginia did not unreasonably find that Cooke failed to satisfy Strickland.

### 3. Counsel Abandoned Excessive Force as a Ground for Cooke's Motion to Suppress

Cooke alleges that his counsel was deficient because she abandoned excessive force as a ground for Cooke's motion to suppress. Cooke argues that Officer Gluba used excessive force

by sending the police dog after him without warning Cooke first. Cooke further alleges Officer Gluba shot him a second time even though Cooke was on the ground immobilized from the first gunshot wound. Cooke claims that his counsel had overwhelming evidence to prove excessive force, and by not presenting that claim, counsel weakened Cooke's self-defense claim and prejudiced Cooke's trial.

The Supreme Court of Virginia held that, "[t]he record, including the trial transcript, demonstrates that before Officer Gluba released Ingo, his police K9, he warned [Cooke] to stop." Cooke, at 6. Accordingly, the court found that Cooke failed to show Officer Gluba used excessive force as a matter of law. Id. The court also noted that Cooke did not establish that the Circuit Court would have granted the motion to suppress on the basis of excessive force. Id. Therefore, the court found that Cooke failed to demonstrate that his counsel was ineffective under Strickland. The Supreme Court of Virginia did not unreasonably apply the law to this case because there was sufficient evidence in the record to support the conclusion that Officer Gluba warned Cooke of the police dog before the dog was released.

Cooke also claims that even though Officer Gluba shot Cooke while Cooke lay on the ground immobilized from the first gunshot wound, his counsel still did not pursue excessive force in his motion to suppress. Under Strickland, there is a strong presumption that counsel has rendered adequate assistance and has exercised reasonable professional judgment. Strickland, 466 U.S. at 690 ("[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."). Additionally, "[w]hen counsel focuses on some issues to the exclusion of others, there is a strong presumption that he did so for tactical reasons rather than through sheer neglect." Yarborough v. Gentry, 540 U.S. 1, 8 (2003). The record indicates that Officer Gluba shot Cooke while Cooke lay on the

ground because Cooke attempted to reach for his handgun. (Trial Transcript at 530). As a former police officer herself, Cooke's counsel was presumably familiar with the legal standard governing the police's use of deadly force and strategically chose not to assert the excessive force claim as a ground for the motion. See Elliot v. Leavitt, 99 F.3d 640, 642 (4th Cir. 1996) (stating a police officer may use deadly force when "the officer has sound reason to believe that a suspect poses a threat of serious physical harm to the officer or others"). The Court must presume that Cooke's counsel strategically declined to advance the excessive force argument in light of Elliot and counsel's claim is entitled to deference.

Even if Cooke's counsel had not abandoned the excessive force claim as a ground for the motion to suppress, Cooke still has not presented this Court with evidence to establish the motion to suppress would have been granted on that basis. The Supreme Court of Virginia reasonably determined therefore that Cooke's counsel was not constitutionally ineffective.

### 4. Counsel Failed to Submit Cooke's Pretrial Motion to Suppress On Time

Cooke claims that his counsel was ineffective for failing to file Cooke's motion to suppress on time even though she had eight months to prepare it. Cooke asserts that if his counsel had timely filed the motion to suppress, all of the evidence against him would have been excluded.

The Supreme Court of Virginia found that Cooke's counsel did in fact timely file the motion to suppress, though she did not schedule a hearing at least three days before trial as required. Cooke, at 7. The Circuit Court refused to hold a hearing on Cooke's motion to suppress before his trial on the felon in possession of a firearm charge because the hearing was not scheduled in time, but the Circuit Court did hold a suppression hearing before the trial for malicious wounding and denied the motion. The Supreme Court found that Cooke "fail[ed] to

articulate how the timing of the hearing affected the [Circuit] court's decision," and therefore Cooke failed to satisfy either the "performance" or "prejudice" prong of Strickland. Id.

The Supreme Court of Virginia did not unreasonably apply the law to this claim. The record shows that Cooke's counsel did timely file Cooke's motion to suppress seven days before trial, but failed to schedule the suppression hearing at least three days before trial as required by Virginia Code § 19.2-266.2(B). (Trial Transcript at 13-14). On February 28, 2006, the trial date for the charge of possession of a firearm by a convicted felon, Cooke's counsel moved for a continuance to allow the motion to suppress to be heard at least three days before trial. (Trial Transcript at 11-24). Although the Circuit Court denied this motion, it heard the same evidence and the same arguments on the motion to suppress as to the remaining charge. The Circuit Court denied the motion. Regardless of the timing, the Circuit Court did hold a suppression hearing where it heard Cooke's arguments, and the court denied the motion. Cooke fails to show that there is a reasonable probability that the Circuit Court would have granted Cooke's motion to suppress had his counsel made her argument at the first hearing instead of the second. Therefore, the Supreme Court of Virginia reasonably determined that the timing of the hearing was not prejudicial and that counsel was not ineffective.

### 5. Counsel Failed to Impeach Investigator Jon Cromer

Cooke charges that his counsel was ineffective for failing to impeach Investigator Jon Cromer at Cooke's motion to suppress hearing. Cooke claims that Investigator Cromer committed perjury when he testified about (1) his initial encounter with Cooke; (2) Cooke's arrest; and (3) how he identified Cooke. Specifically, Cooke contends that Investigator Cromer came to talk to him at the hospital under false pretenses. Investigator Cromer testified that his purpose for speaking with Cooke was to locate Cooke's family. Cooke claims, however, that

Investigator Cromer possessed a signed search warrant for Cooke's car containing information such as Cooke's name, address, prior criminal charges, and included an affidavit with information on Cooke's identity and the events of October 24, 2004. Cooke argues that if his counsel had used this warrant to impeach Investigator Cromer's testimony, it would have shown Cooke was under arrest the entire time he was hospitalized and that Investigator Cromer violated Cooke's Miranda rights by questioning him there.

The Supreme Court of Virginia found that Cooke was not arrested until *after* he made incriminating statements. Cooke, at 8–9. The Court further determined that Cooke's counsel had adequately cross-examined Investigator Cromer and that Cooke failed to state what additional questions counsel should have asked. Id. Therefore, the Court found that the claim satisfied neither the "performance" nor "prejudice" prong of Strickland.

The Supreme Court of Virginia did not unreasonably apply the law to this case. Cooke's counsel questioned Investigator Cromer about the timeline of events, the voluntariness of Cooke's statements during Investigator Cromer's conversations with him, and Investigator Cromer's purpose for questioning Cooke. (Trial Transcript at 169–78). Cooke's counsel presumably strategically chose to cross-examine Investigator Cromer rigorously instead of trying to impeach him with the search warrant, and this Court presumes Cooke's counsel used professional judgment when making this decision. Strickland, 466 U.S. at 690 ("[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."). The Supreme Court of Virginia's conclusion regarding this claim was reasonable.

### 6. Counsel Failed to Cross-examine Investigator Jon Cromer

Cooke claims, without elaboration, that his counsel was ineffective for not cross-examining Investigator Cromer.

The Supreme Court of Virginia found that Cooke "fail[ed] to identify the questions counsel should have asked Investigator Cromer on cross-examination or the response Investigator Cromer would have given." Cooke, at 9. The Court further found that Cooke had failed to show that there was a reasonable probability that, but for counsel's alleged deficiency, the results of the proceedings would have been different. Id. Thus, the Supreme Court held that Cooke's counsel was not ineffective.

The Supreme Court of Virginia did not unreasonably apply the law to this case. Cooke's counsel cross-examined Investigator Cromer during arraignment on February 28, 2006, during the motion to suppress hearing on April 5, 2006, and during trial on April 13, 2006. Cooke, at 8–9. Additionally, Cooke adequately questioned Investigator Cromer about all his conversations with Officer Gluba at the hospital, whether Officer Gluba told Investigator Cromer what had transpired that night, and his visits with Cooke at the hospital. (Trial Transcript at 734–40, 749–68). Because counsel adequately cross-examined Investigator Cromer at several stages of the proceedings, and Cooke fails to establish what further questions counsel should have asked, the Supreme Court of Virginia's determination was reasonable.

### 7. Counsel Waived Cooke's Right to a Speedy Trial

Cooke next contends that his counsel was ineffective for waiving Cooke's right to a speedy trial. He argues that he did not sign the motion to continue and the record does not show that Cooke expressly waived his speedy trial rights. He also claims that the continuance helped the prosecutor, who had not yet received all the evidence from the state police, thus prejudicing Cooke.

The Supreme Court of Virginia found that Cooke "fail[ed] to present any evidence to support his argument that counsel waived his rights to a speedy trial." Cooke, at 13. The Supreme Court of Virginia also found that the record demonstrated counsel actually sought a continuance for Cooke's benefit. Id. Thus, Cooke failed to establish his allegation had any merit and failed to satisfy the "performance" and "prejudice" prongs of Strickland.

The Supreme Court of Virginia did not unreasonably apply the law to this case. Cooke failed to show that he raised any objections to the continuance during his proceedings, and thus waived his speedy trial rights. Further, Cooke's counsel filed a continuance motion on October 13, 2005 for Cooke's benefit. According to the motion, Cooke's counsel requested a continuance because "at least one of the resource experts [would] not be able to complete his work" in time for trial, counsel and his investigator were still reviewing the physical evidence in the case, and counsel's "lack of preparation [would] severely prejudice [Cooke]" if the trial were not continued. Cooke, at 13. Cooke's counsel requested a continuance in order to defend Cooke adequately by the trial date.

Cooke also fails to present evidence that he was prejudiced by his counsel's decision. Cooke contends that he was prejudiced because the continuance helped the prosecution gather more evidence against him. However, without the continuance, his own counsel would not have been adequately prepared to defend him. He also failed to demonstrate that but for his counsel's alleged deficiency, the outcome of his proceedings would have been different. Thus, the Supreme Court of Virginia reasonably determined that Cooke satisfied neither the "performance" nor "prejudice" prong of Strickland.

**8. Counsel Failed to Request a Change of Venue**

Cooke asserts that his counsel was ineffective by asking for an expanded jury pool instead of requesting a change of venue. He argues that before and during the trial, the media "irresponsibly published incompetent and prejudicial information" about his case. He also argues that there is "presumed prejudice for jurors who learn of prior criminal histories through news sources," and therefore, any jury would have been biased against him, necessitating his counsel to request a change of venue.

The Supreme Court of Virginia found that Cooke's counsel's request for an expanded jury pool was adequate to ensure a fair trial. Cooke, at 15. The Supreme Court also found that Cooke failed to present any evidence that showed the jury was in fact biased. Id. Thus, Cooke failed to establish that his allegation had any merit, and he failed to satisfy the "performance" and "prejudice" prongs of Strickland.

The Supreme Court of Virginia's decision was not contrary to federal law. The Circuit Court granted Cooke's counsel's request for an expanded jury pool. Cooke, at 15. Because Cooke's trial took place two years after the October 24, 2006 incident, his counsel presumably requested an expanded jury pool instead of a change of venue for tactical reasons. It is likely that a majority of the physical evidence and witnesses still resided in the area. Voir dire was also extensive and adequate to ensure an impartial jury. The trial judge, Cooke's counsel, and the Commonwealth's attorney asked the jurors numerous times whether they had heard of the case through the news media, and if so, whether that would affect their impartiality. (See Trial Transcript at 250, 257, 272, 320–21). Cooke fails to present any evidence demonstrating that the jury was biased and fails to show that, but for his counsel's alleged deficiency, the jury would have acquitted him. Therefore, the Supreme Court's determination was reasonable.

**9. Counsel Failed to Impeach Officer Gluba**

Cooke claims that his counsel was ineffective for failing to impeach Officer Gluba's trial testimony. Cooke contends that had his counsel not stipulated to the evidence recovered at the crime scene, she could have impeached Officer Gluba with photographs showing the number of rounds he fired. Cooke argues that impeaching Officer Gluba with this evidence would have shown excessive force and supported his claim of self-defense. Cooke further argues that his counsel could have also impeached Officer Gluba as to the thirty spent cartridges, the bullet hole in the white van, and the magazine clip found at scene, showing that Officer Gluba shot his own dog.

The record before the Supreme Court of Virginia indicated that Cooke admitted to shooting the police dog. The Supreme Court also found that the "forensic evidence proved that the bullet that struck [the police dog] was consistent with the ammunition found in [Cooke's] gun." Cooke, at 11–12. Moreover, Cooked failed to provide questions his counsel should have asked Officer Gluba to impeach Officer Gluba's answer when asked how many shots he fired during the skirmish. Accordingly, the Supreme Court of Virginia held that Cooke failed to demonstrate that his counsel his counsel was ineffective.

The Supreme Court of Virginia did not unreasonably apply the law to this case. Upon review of the forensic expert's testimony, the Court is satisfied with the Supreme Court of Virginia's determination that the forensic evidence proved Cooke shot the police dog. Although the expert witness, Ann Davis, could not affirmatively testify that the bullet found in the police dog came from Cooke's gun, she did testify that it was consistent with the ammunition found in Cooke's gun and inconsistent with the type of ammunition found in Officer Gluba's gun. (Trial Transcript at 718–19). Further, Cooke admitted that he shot *at* the dog while fleeing. (Trial Transcript at 877). Cooke also testified, "I shot that dog trying to save myself because I saw

nothing but teeth and I didn't want to get—I know what dogs do from watching TV." (Trial Transcript at 875). In light of this record, the Supreme Court's reasonably determined that Cooke's counsel was not ineffective.

**10. Counsel Failed to Present Self-Defense Theory**

Cooke claims, without any elaboration, that his counsel was ineffective for not presenting a claim of self-defense.

In holding that Cooke's counsel was effective, the Supreme Court of Virginia found that Cooke's counsel did in fact present evidence that Cooke acted in self-defense when he injured the police dog. Cooke, at 11. The Supreme Court also found that Cooke failed to identify any additional evidence his counsel could have presented to bolster his self-defense claim. Id.

The Supreme Court of Virginia did not unreasonably apply the law to Cooke's claim. To prove Cooke's self-defense claim, his counsel presented testimony by eyewitness Kyle Gentry and Cooke himself. Gentry testified that he did not hear Officer Gluba yell any warnings before commanding the police dog to apprehend Cooke, and he did not hear the dog bark. (Trial Transcript at 830, 832). Cooke also testified that he was protecting himself from the police dog. (Trial Transcript at 850–54). Cooke fails to identify what more his counsel could have done to demonstrate self-defense. Without such a showing, his counsel's failure to present more evidence to show a claim of self-defense does not warrant relief, and the Supreme Court of Virginia's determination was reasonable.

**11. Counsel Operated Under a Conflict of Interest**

Cooke next contends that his counsel was ineffective because she had a strong conflict of interest due to her having worked for the Albemarle County Police Department for eleven years, being friends with people in the police department, and holding a position in the community that

could be threatened by the case. Because of this conflict, Cooke argues that his counsel (1) waived Cooke's speedy trial right without consent, (2) failed to impeach properly, (3) was unprepared for important motions, (4) stipulated to evidence at the crime scene, (5) did not use the search warrant or shell casing photos, and (6) dropped the excessive force claim. Cooke also alleges, without any factual support, that his counsel sent Cooke's defense strategy to the prosecution. Cooke further asserts that because of his counsel's conflict of interest, there is a presumption of prejudice.

The Supreme Court of Virginia found that Cooke failed to demonstrate that his counsel "actively represented conflicting interests and fails to state how any of counsel's actions were adversely affected by the alleged conflict," and thus failed to satisfy either the "performance" or "prejudice" prong of Strickland. Cooke, at 14.

The Supreme Court of Virginia's decision does not contradict federal law. In order to establish that Cooke's counsel's alleged conflict of interest violated the Sixth Amendment, Cooke must show there was an actual conflict of interest *and* that it adversely affected his counsel's performance. Cuyler v. Sullivan, 446 U.S. 335, 348-50 (1980); Mickens v. Taylor, 535 U.S. 162, 171–72 (2001); Baker v. Commonwealth, 2009 WL 362094, at *2 (Va. Ct. Appeals Feb. 17, 2009) (quoting Carter v. Commonwealth, 11 Va. App. 569, 574 (1991)); see also, Mickens, 535 U.S. at 171 ("[W]e think 'an actual conflict of interest' meant precisely a conflict that affected counsel's performance—as opposed to a mere theoretical division of loyalties."). Cooke fails to show that there was an actual conflict of interest that adversely affected his counsel's performance. His counsel had been a police officer with the Albemarle County Police Department from 1985 to 1996, fully ten years before Cooke's trial in 2006. (Trial Transcript at 268). The ten year interval between counsel's police employment and Cooke's trial was more

than adequate to purge any conflict that might have existed following her employment with the police department. Her prior employment as a police officer also came to light early on in trial during the voir dire phase. (Trial Transcript at 268). However, Cooke made no objections to a conflict of interest at that time. Cooke also fails to provide any evidence demonstrating that his counsel's alleged conflict of interest adversely affected her representation. Because Cooke cannot show that his counsel actively represented conflicting interests or that her allegedly conflicting representations were prejudicial, Cooke's claim does not warrant relief.

### 12. Counsel Conspired with the Prosecutor

Cooke also claims that his counsel was ineffective because she conspired with the prosecution to convict him. He alleges, without any factual support, that his counsel sent her defense strategy to the prosecutor, and as a result, the prosecutor knew Cooke's entire presentation before trial. Cooke also contends that his counsel conspired against him by (1) failing to challenge the testimony of Investigator Cromer, Officer Mart and Officer Gluba; (2) withholding pertinent evidence and failing to call witnesses; (3) allowing false testimony to be presented without objection; (4) allowing a biased jury to be seated; (5) waiving Cooke's right to a speedy trial; (6) failing to pursue the results of the tests performed on the shell casings; and (7) failing to prepare a competent and reasonable trial strategy or defense. See Cooke, at 12.

The Supreme Court of Virginia found no evidence to support any of Cooke's allegations. The Supreme Court reviewed Cooke's counsel's alleged actions and inactions, which Cooke claimed proved the conspiracy, and found that Cooke failed to demonstrate *any* factual support for his conspiracy allegation. Id. at 13.

The Supreme Court of Virginia's decision does not contradict federal law. The record shows that Cooke's counsel did thoroughly cross-examine Officer Cromer during arraignment on

February 28, 2006, during motions hearing on April 5, 2006, and during the trial on April 13, 2006. (Trial Transcript at 87; 169–185; 729) Additionally, as discussed above, the forensic evidence showed the bullet that struck the police dog was consistent with the ammunition found in Cooke's gun, and Cooke failed to show how impeaching Officer Gluba with this information would have helped his self-defense claim. The record also reflects that the trial judge, Cooke's counsel, and the prosecution conducted extensive voir dire on an expanded jury pool to ensure impartiality. (Trial Transcript at 247–387). Cooke also failed to demonstrate any evidence to support his argument that his counsel waived his right to a speedy trial. As to Cooke's remaining allegations, Cooke does not provide any evidence to support his claim of conspiracy. Therefore, the Supreme Court of Virginia was reasonable in finding that Cooke's counsel was not ineffective for conspiring with the prosecution.

### 13. Counsel Failed to Question the Tactics Used to Collect Evidence

Cooke next claims that his counsel was ineffective for stipulating to the evidence police recovered at the crime scene rather than challenging the soundness and validity of the tactics police used to collect it. Cooke argues that because his counsel stipulated to the evidence recovered, she was unable to cross-examine Officer Martin's testimony effectively regarding the collection of evidence at the crime scene.

The Supreme Court of Virginia found that "the record, including the trial transcript and exhibits, demonstrate that Officer Martin accounted for, received and documented all of the items collected at the scene." Cooke, at 10. The Supreme Court also found Cooke failed to present any evidence to establish a basis upon which his counsel could have challenged the tactics used to collect evidence. Id. Therefore, the Supreme Court of Virginia found that Cooke failed to satisfy Strickland.

The Supreme Court of Virginia did not unreasonably apply the law to this claim. On direct examination, Officer Martin testified, at length, to how he collected, documented, accounted for, and stored evidence recovered at the crime scene. (Trial Transcript at 618–19, 636, 644–46, 652). On cross-examination, Cooke's counsel also questioned Officer Martin on the tactics he used to collect evidence. (Trial Transcript at 644–51). More specifically, Cooke's counsel cross-examined Officer Martin on how he took the measurements at the crime scene, the equipment he used, and the photographs he took at the crime scene. (Trial Transcript at 644–51). Cooke's counsel was not constitutionally ineffective simply because Cooke disagrees with his counsel's questioning or believes his counsel should have asked different questions. The record demonstrates that Cooke's counsel adequately cross-examined Officer Martin. Thus, the Supreme Court's determination on this issue was reasonable.

## 14. Counsel Failed to Authenticate Medical Records and Present it at Trial

Lastly, Cooke contends that his counsel was ineffective for failing to authenticate his medical records and for failing to have Dr. Bruce Cohen testify during trial. Cooke argues that Dr. Cohen would have testified to Cooke's physical and mental condition while he was in the hospital to demonstrate that he did not knowingly and voluntarily give his self-incriminating statements to Investigator Cromer.

The Supreme Court of Virginia, however, noted that Cooke's counsel did call Dr. Cohen to testify at the suppression hearing concerning the medication Cooke was taking and whether his statements were made knowingly and voluntarily to Investigator Cromer. Cooke, at 6–7. Because the medical records Dr. Cohen relied on had not been admitted into evidence, the Circuit Court did not allow Dr. Cohen to testify. However, the Supreme Court of Virginia still found Cooke failed to show how the medications he was allegedly taking affected his ability to

knowingly and voluntarily give a statement to the police officers. Id. at 7–8. Further, the Supreme Court found that the record "demonstrated sufficient testimony was presented to establish the statements [Cooke] made were knowing and voluntary." Id. Therefore, the Supreme Court of Virginia found that Cooke failed to satisfy Strickland.

The Supreme Court of Virginia did not unreasonably apply the law in this case. Investigator Cromer testified to Cooke's level of consciousness, rate of speech, volume of speech, and alertness while being interviewed by Investigator Cromer at the hospital. (Trial Transcript at 758–60). Investigator Cromer also testified that Cooke was willing to talk to him and that Cooke wanted to tell Investigator Cromer his story. (Trial Transcript at 764–65). Cooke also willingly made a statement to Investigator Cromer even after Investigator Cromer told Cooke that he did not have to. (Trial Transcript at 687). Moreover, Cooke fails to demonstrate that had Dr. Cohen testified to his mental capacity, the jury would have acquitted him. Therefore, this Court finds that the Supreme Court's determination on this issue was reasonable.

## V. Conclusion

Cooke is procedurally barred with respect to his prosecutorial misconduct claims, and the Respondent is entitled to judgment as a matter of law on those claims. Further, Cooke's ineffective assistance of counsel claims are not meritorious, and the Respondent is entitled to judgment as a matter of law on these claims as well.

For the stated reasons, the Respondent's motion to dismiss (Dkt. No. 12) is **GRANTED** and Cooke's 28 U.S.C. § 2254 Petition (Dkt. No. 1) is **DENIED**. An appropriate order shall issue this day.

Petitioner is advised that he may appeal this decision, pursuant to Rule 3 and 4 of the Federal Rules of Appellate Procedure, if a judge of the United States Court of Appeals for the Fourth Circuit or this court issues a certificate of appealability pursuant to § 2253(c). A certificate of appealability may issue only if the applicant has made a substantial showing of denial of a constitutional right. 28 U.S.C. § 2253(c)(2). This Court finds that Cooke has failed to demonstrate such a showing, and thus declines to issue any certificate of appealability pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure. See Miller-El v. Cockrell, 537 U.S. 322 (2003); Slack v. McDaniel, 529 U.S. 473 (2000). If Cooke intends to appeal and seek a certificate of appealability from the Court of Appeals for the Fourth Circuit, his first step is to file a notice of appeal with this Court within 30 days of the date of entry of the final order, or within such extended period as the Court may grant pursuant to Rule 4(a)(5) of the Federal rules of Appellate Procedure.

The Clerk is directed to send copies of this memorandum opinion and the accompanying final order to Cooke and counsel of record for the Respondent.

**ENTER:** This 13th day of May, 2011

Senior United States District Judge